IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BARRY EARL RAY,** ) | |
| ) | |
|     **Claimant** ) | |
| ) | |
| v. ) | Civil Action No.: 2:12-CV-00191-KOB |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
|     **Defendant.** ) | |

**REVISED MEMORANDUM OPINION**

**I. INTRODUCTION**

On August 31, 2009, the claimant, Barry Earl Ray, applied for supplemental security income under Title XVI of the Social Security Act. The claimant alleges disability commencing on May 24, 2009 because of beck and neck pain. The Commissioner denied the claim both initially and on reconsideration. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on January 31, 2011. (R. 19, 21). In a decision dated May 12, 2011, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for supplemental security income. (R. 25). On November 23, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 4). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

1

## II. ISSUES PRESENTED

The claimant presents three issues for review: (1) whether the ALJ made a factually inconsistent residual functional capacity ("RFC") finding, (2) whether the ALJ adequately considered the evidence of record, and (3) whether the ALJ properly developed the record.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo.* The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *See* 20 C.F.R. §§ 404.1520, 416.920.

In determining a claimant's RFC the ALJ should consider "all the 'relevant medical and other evidence.'" *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (quoting 20 C.F.R. § 404.1545(a)(3)). However, the ALJ need not "specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

In evaluating pain and other subjective complaints, the Commissioner must first consider whether the claimant demonstrated an underlying medical condition, and then "*either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223

(11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

While the burden rests with the claimant to prove a disability, the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(c). This duty may include ordering a consultative evaluation. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (internal citations omitted). However, the duty does not include "order[ing] a consultative examination [when] the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

## V. FACTS

The claimant has a G.E.D. and was fifty-three years old at the time of the administrative hearing. (R. 66). His past work experience includes employment as a trash collector. The claimant alleged he has been unable to work because of back and neck pain since May 24, 2009. He claimed that injuries from a car accident in his personal vehicle on that day cause his back and neck pain. (R. 24, 107-08).

### *Physical Limitations*

Four days after the car accident, the claimant reported visiting the UAB Bessemer emergency room and, on the same date, a chiropractor, Dr. Gerald J. Collins. The claimant reported receiving medication and physical therapy, respectively. The Social Security Administration was unsuccessful in obtaining records from either source. (R. 131-132, 184).

On November 7, 2009, Dr. Sharman Sanders conducted a consultative examination on the claimant. Dr. Sanders noted that the claimant made multiple sudden movements, moved his neck in between "form exams," bent over to put on his shoes and socks and easily got on and off

the exam table.  Further, Dr. Sanders stated that the claimant appeared intoxicated with slurred speech.  The claimant admitted to Dr. Sanders he had four beers before the examination.  (R. 193-195).  Dr. Sanders reported that the claimant's motor strength in his "[b]ilateral deltoid and iliopsoas was a 3/5 … Otherwise he is a 5/5 throughout."  The claimant had "normal muscle bulk and tone."  Before Dr. Sanders could finish testing his strength, however, the claimant became uncooperative and ended the examination.  (R. 196).

On December 17, 2009, Dr. Robert G. Macgregor, treated the claimant for a seizure he suffered a month prior while drinking with friends.  Dr. Macgregor scheduled a brain and spine MRI and started a trial of Flexeril.  (R. 246).

On February 11, 2010, the claimant returned to Dr. Macgregor complaining of knee pain and swelling.  Dr. Macgregor reported that the NCS/EMG indicated the claimant suffered from C8 radiculopathy and that the claimant's EEG was normal.  He also stated the claimant had normal bulk and tone and "strength limited by pain in L deltoid, bicep.  Otherwise he is 5/5."  For the seizures, he prescribed no medication but did counsel the claimant about alcohol abuse.  He also ordered a second MRI, continued the Flexeril medication and suggested trying Neurontin.  (R. 231).

On March 10, 2010, the claimant saw Dr. Thomas Stewart Huddle for routine medical treatment and an MRI with Dr. Siddhartha Gaddamanugu.  At the appointment, the claimant reported suffering whiplash from a second car accident five days prior.  The accident occurred in his driveway while he and a friend were drinking in the car.  The claimant did not visit the emergency room after this accident; instead, the claimant took Aleve and Flexeril "with some relief."[1]  (R. 225-226).  The MRI demonstrated lower cervical spondylosis and mild canal

---

[1] It is not clear whether the "1-2 beers/day" or morning beer before his appointment contributed to the claimant's relief.  (R. 225).

narrowing. (R. 278-279). Dr. Huddle had the claimant continue the Flexeril and prescribed sixty mg of Motrin every eight hours for two weeks. (R. 225-226). Further, Dr. Huddle made an out-patient request for physical therapy. (R. 261-262).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before the ALJ. (R. 64).

The claimant testified that when walking ten to fifteen feet or more than half a block, he experiences numbness in his right arm and leg. (R. 69-70). He testified that this numbness was not painful. However, he clarified that the pain further limited his physical abilities because he would "catch a grabbing pain" if he rotated his neck. (R. 71). He testified that the pain and numbness would prevent him from holding a gallon of milk (R. 70), holding a railing (R. 81), or washing the dishes without breaks. (R. 79). But he testified that the numbness and pain did not prevent him from getting dressed (R. 71), but did stop him from bending over or squatting down (R. 73). He also testified that the plain required him to wear a back and neck brace. (R. 77). He further testified that the pain can reach a level of nine on a scale of one to ten. (R. 79).

The claimant testified that seeing a chiropractor did not help with the pain. He was unsure of exactly what medicine he was taking, but he stated that they "kind of help." The medication did, however, also make him sleepy. He also testified that the medication "lasts a while" but that the pain is still there when he wakes up. (R. 72).

A vocational expert, Dr. Kessler, testified concerning the type and availability of jobs that the claimant was able to perform. (R. 82-85). He classified the claimant's previous work experience as a trash or garbage collector as unskilled and very heavy. When the ALJ asked him whether a hypothetical individual limited to light work could work as a trash collector, Dr.

Kessler responded that such an individual could not.  (R. 82-83).  Specifically, the ALJ hypothesized about an individual "limited to light work, provided there's no climbing or ladders, ropes, or scaffolds," and no frequent stooping or kneeling.  The ALJ further limited the individual to "moderate limits in exposure to unprotected heights."  The ALJ then asked what jobs, if any, would such an individual with an age range of 52-53 and a 12th grade education be able to perform.  Dr. Kessler responded that such an individual could perform the jobs of "machine operator or tender," DOT 920.685-022, and of "assemblers and production workers," DOT 706.684-022.  (R. 83).

*The ALJ's Decision*

On May 12, 2011, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act.  (R. 25).  First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of his disability.  Next, the ALJ found that the claimant's back and neck pain qualified as a severe impairment; however, it did not manifest the specific signs and diagnostic findings required by the Listing of Impairments.  (R. 21).

The ALJ then considered the claimant's subjective allegations of pain to determine his residual function capacity.  The ALJ concluded that "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms," but that the "the claimant's statements concerning the intensity, persistence and limiting effects of this symptoms are not credible."  (R. 22-23).

To support his conclusion, the ALJ first referenced Dr. Sanders' consultative examination.  The ALJ found that this exam hurt the claimant's credibility because his report conflicts with several of the claimant's statements.  The ALJ found that, despite the claimant's assertion that he always wears a back brace, he was not wearing one at the time of the

examination. Next, the ALJ found that, despite the claimant's alleged inability to move his neck, he was "bending his chin all the way down to his chest and moving his neck around without any apparent problems." The ALJ also noted that, again, despite the claimant's assertion that he was unable to bend over, Dr. Sanders observed the claimant "reach down, bend over [to the floor], and retrieve his shoes and socks, without any evidence of pain." Further, the ALJ stated that Dr. Sanders "believes the claimant's motor strength is 5/5." (R. 23).

The ALJ then discusses the consistency of Dr. Sanders' assessment with the other medical evidence on record. He noted that the "MRI findings were generally unremarkable." He relied on Dr. Gaddamanugu's assessment "that claimant's spinal X-rays of cervical and thoracic were normal." He also noted that the head CT scan "showed no evidence for acute intracranial pathology" and that the claimant's "EEG was normal." *Id*.

Thus, the ALJ found that the claimant could "perform light work, except that claimant can never climb ladders, ropes, or scaffolds, can only frequently crouch, stoop and kneel, and can frequently be exposed to unprotected heights." (R. 22). The ALJ, in making the RFC finding, gave the greatest weight to Dr. Sanders but also gave significant weight to the other medical evaluations. He further stated that the other evaluations were "consistent with the total medical evidence." (R. 24).

Next, the ALJ determined that the claimant was unable to perform any past relevant work. However, relying on the testimony from the vocational expert, he found that the claimant could perform jobs that exist in significant number in the national economy. (R. 24). Specifically, he found that the claimant could perform the jobs of machine tender and of assembler production. Based on these findings, the ALJ concluded that the claimant is not disabled under the Social Security Act. (R. 25).

## VI. DISCUSSION

After careful review, the court concludes that the ALJ applied the correct legal standards and substantial evidence supports his decision. The court addresses the claimant's arguments below.

*Factual Inconsistency in the ALJ's RFC Finding*

The claimant first argues the ALJ committed error by finding the claimant could not climb ladders, ropes or scaffolds, yet could frequently be exposed to unprotected heights. The claimant contends these findings are mutually exclusive because there is "no provision for the claimant to get up or down from the heights he can purportedly work … or for the type of platform this individual is to work on with protection if not some type of scaffold." (PL.'s Mem. 5-6). However, even if the court accepts this argument, this inconsistency would be a harmless error.

When the ALJ found that the claimant could perform jobs in the national economy, he relied on the Vocational Expert's testimony at the Oral Hearing. (R. 24-25). The ALJ asked the Vocational Expert about professions with "moderate limits in exposure to unprotected heights." (R. 83). However, the Vocational Expert answered with occupations, machine operator and assembler, that do not include any exposure to unprotected heights. *Id*.; s*ee* DOT Listing No. 920.685-022 *available at* DICOT § 920.685-022; s*ee* DOT Listing No. 706.684-022 *available at* DICOT § 706.684-022. Thus, any error regarding the claimant's ability or inability to work at unprotected heights is harmless. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

*Consideration of the Record*

Next, the claimant argues that, in his determining his RFC, the ALJ did not adequately consider the entire record and over relied on Dr. Sanders' consultative examination. Specifically, the claimant contends that the ALJ erred by failing to cite to any medical evidence after November 2009. The claimant further argues that the ALJ based his RFC finding solely on Dr. Sanders' consultative examination, ignoring other medical evidence and testimony. To the contrary, the court finds the ALJ properly considered the medical evidence on record and discredited the claimant's testimony.

"The ALJ makes an RFC finding based on all the 'relevant medical and other evidence.'" *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (quoting 20 C.F.R. § 404.1545(a)(3)). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ's findings only must indicate the ALJ "considered [the claimant's] medical condition as a whole." *Id.* (internal quotation marks omitted) (quoting *Foote v. Chater*, 67 F.3d 1553, 158 (11th Cir. 1995)).

The claimant's contention that the ALJ did not consider any medical evidence after November 2009 lacks merit. The ALJ explicitly referenced Dr. Huddle's treatment of the claimant in March of 2010. He specifically cited the 2010 MRI and referenced the interpreting physician. He noted that Dr. Gaddamanagu "opined that no thoracic spine fracture or subluxation identified." (R. 23). The claimant highlights the omission of his March 4, 2010 car accident and resulting whiplash, continued back and neck pain, and treated radiculopathy (Pl.'s Mem. 7-8); however, the ALJ *did find* that the claimant suffered back and neck pain caused by "underlying medically determinable … impairment(s)." (R. 21-22); *see Holt,* 921 F.2d at 1223.

The issue is not whether the claimant has back and neck pain caused by an underlying medical condition; the issue is the extent and the severity of the pain.  Here, the claimant does not point to any medical evidence or any treating physician's opinion, and the court finds none in the record, that conflict with the ALJ's determination of the extent or severity of the claimant's pain or his overall RFC assessment.[2]  Thus, the ALJ adequately considered the "relevant medical … evidence" in making his RFC determination.  *See Siverio*, 461 F. App'x at 871.

When a claimant attempts to establish disability through his testimony of pain or other subjective symptoms, the three-part pain standard applies.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  To meet the pain standard, a claimant must demonstrate "(1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain."  *Id*.  (emphasis added).  A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.  *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995).

The ALJ may discredit a claimant's subjective testimony of pain if he does so specifically and articulates his reasons for doing so.  *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  Failure to articulate adequate reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true.  *Id*.  However, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote,* 67 F.3d at 1562 (other citations omitted).

---

[2] In fact, Dr. Macgregor's opinion of the claimant's motor strength, omitted from the ALJ's decision, mirrors Dr. Sanders' opinion.  (R. 231).

The ALJ explicitly articulated his reasons for discrediting the claimant's alleged severity and limiting effect of his pain. When discrediting the claimant's testimony, the ALJ specifically noted numerous inconsistencies in the claimant's previous statements. For example, despite the claimant's stated inability to "even bend over," the ALJ "observed him bend over at the hearing." The claimant claimed "he wears a brace all the time," yet did not wear one to his medical evaluation with Dr. Sanders. (R. 22). The ALJ cited Dr. Sanders' statement that the claimant made several sudden movements, rotated his neck and bent over to pick up his shoes and socks. The ALJ also noted Dr. Sanders' observation that the claimant only seemed to have trouble moving during specific portions of the exam. (R. 23). And, as discussed above, the other medical records and opinions do not contradict Dr. Sanders' or the ALJ's assessment. Thus, the ALJ's discrediting of the claimant's testimony was supported by substantial evidence, and the court will not second guess the ALJ's credibility determination. *See Foote,* 67 F.3d at 1562.

*Development of the Record.*

Finally, the claimant argues the ALJ should have ordered a second consultative medical examination pursuant to 20 C.F.R. 416.919(a) or considered a medical expert opinion pursuant to 20 C.F.R. 416.929(b). According to the claimant, this omission amounts to a breach of the ALJ's duty to develop the record. For reasons discussed below, the court concludes that the ALJ was not required to obtain a consultative examination or medical expert opinion.

As the claimant notes, the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Nevertheless, the burden remains with the claimant to prove that he is disabled and to produce medical evidence supporting his claim. 20 C.F.R. § 416.912(c); *Ellison*, 355 F.3d at

1276.  The ALJ's duty to develop the record encompasses an obligation to order a consultative evaluation when one is needed to make an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (citing *Reeves v. Heckler*, 734 F.2d 519, n.1 (11th Cir. 1984)). However, the ALJ is "not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Normally, a consultative examination is only required when "necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citing 20 C.F.R. § 404.1519a).

In this case, the record held sufficient evidence for the ALJ to determine the claimant's RFC without ordering a consultative evaluation.  The record documents evidence of the claimant's underlying medical condition through lab tests (R. 253-260), a psychiatric review (R. 199-212), MRI results (R. 273-282), and multiple medical progress reports from multiple physicians (R. 213-252).  Further, the claimant testified as to the disabling nature of his back and neck pain and already had a consultative examination with Dr. Sanders.  (R. 62-85, 192-196). Unfortunately, during the examination Dr. Sanders was "unable to evaluate the full severity of the problem" caused by the claimant's lack of cooperation.  (R. 196).  While a completed examination would give a greater degree of certainty as to the severity of the claimant's symptoms, "the statute does not require absolute certainty; it requires only substantial evidence to sustain the [Commissioner's] findings."  *Holladay,* 848 F.2d at 1210.  Dr. Sanders' examination and the record documents provided substantial evidence to support the ALJ's findings, and a second consultative examination was not necessary for the ALJ to make an RFC assessment.

Further, the ALJ did not err by failing to ask for a medical expert opinion to support his RFC findings. Determining the claimant's RFC is not a medical assessment. *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011). Thus, the ALJ is not required to rely on an expert medical opinion in making the RFC assessment. *Id*. Substantial evidence in the record supports the ALJ's RFC assessment.

## VII. CONCLUSION

For the reasons stated above, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 27th day of September 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE